## BEAVER *v.* BEAVER *et al.*

(*Supreme Court, General Term, Third Department.* November 30, 1891.)

GIFTS INTER VIVOS—DEPOSIT IN BANK—RETENTION OF PASS-BOOK.

Where a father, who has deposited money in bank in the name of his infant son, intending thereby to give it to him, retains possession and control of the pass-book, there is no gift. Per LANDON, J., dissenting. Beaver v. Beaver, 22 N. E. Rep. 940, 117 N. Y. 421, followed.

For majority opinion, see 16 N. Y. Supp. 476.

LANDON, J., (*dissenting.*) Upon the facts as now found I think the trial court was obliged by the opinion of the court of appeals upon its review of the former trial, 117 N. Y. 421, 22 N. E. Rep. 940, to find in favor of the defendants. The court of appeals said, page 429, 117 N. Y., and page 942, 22 N. E. Rep.: "We are of opinion that there are lacking in this case two of the essential elements to constitute a gift by John O. Beaver to his son of the money deposited July 5, 1866, viz., an intent to give, and a delivery of the subject of the alleged gift." The plaintiff, upon this trial, has supplied the evidence of the intent to give, but no advance whatever has been made in supplying evidence of the delivery of the subject of the alleged gift. All the facts cited by the court of appeals in its opinion, page 432, 117 N. Y., and page 940, 22 N. E. Rep., to show that there was no proof of delivery, are unchanged. The learned counsel for the plaintiff now earnestly contends that

because John O. Beaver intended, by making the deposit to the credit of Asiel, and did say that he had made a gift to him of the amount, it should have been found as a fact that the gift was complete. There are cases, of which the early case of *Grangiac* v. *Arden,* 10 Johns. 293, is one, in which the fact of delivery has been found from the declarations of the donor, when the other evidence in the case failed to show delivery. But, as we interpret the opinion of the court of appeals, the established fact of the non-delivery of the pass-book, and the continued dominion of John O. Beaver over the deposit, resulting from his form of making the deposit, his possession of the pass-book, and the rules of the bank, which formed part of the contract of deposit, require the finding that there was no delivery of the subject of the gift. The effect of these facts is that the intent to deliver remained unperformed. The judgment must therefore be affirmed unless some error to the prejudice of the plaintiff occurred upon the trial. The burden rested upon the plaintiff to show the delivery of the subject of the gift. Clearly so, after the particulars of the deposit had been shown by the cross-examination of her witnesses. Under the circumstances of this case it was needful to show the delivery by John to Asiel of the pass-book, or some equivalent act. So the court of appeals held. This the plaintiff had not done and could not do. The defendants, however, called several witnesses, whose testimony tended to show not only John O. Beaver's occasional custody of the pass-book, but his continual custody of it. In view of the plaintiff's failure to prove delivery of the pass-book it cannot be important whether the defendant's witnesses, who were unnecessarily called to establish the negative, were competent or not. But if we assume that delivery of the pass-book might have been inferred from John O. Beaver's declarations, if there were no evidence except that extracted from the plaintiff's witnesses,—and this was probably the theory of the defendants,—then it was material for them to show who had the pass-book. Among other witnesses, the widow of John O. Beaver testified, under objection based upon section 829 of the Code, that on the day the deposit was made her husband and herself went together to Kingston, some seven or eight miles distant from their home; that her husband had the money in his pocket; that Asiel, then a lad of 17, remained at home; that she did not go with her husband to the bank, but that he brought the pass-book home with him, and thereafter and until her husband's death the book was kept in the bedroom which she and her husband occupied; that she and her husband, or both of them, had the possession of the book. The substance of this testimony is that she saw her husband have the book on the day of the deposit, and saw where he afterwards kept it, and that he did keep it until his death. Strictly speaking, this was the unilateral act of the husband which the wife observed. There is no necessity to infer from it that the husband ever delivered the book to his wife, or that she was in any way such a participant in its custody as to make his custody of it derivable from or through any transaction between the two. Her testimony, therefore, falls neither within the spirit of the prohibition nor within its letter. As the book was kept in the bedroom of herself and husband, she doubtless often performed some acts of care respecting it, just as she may have done in respect of the furniture in the same room; but such acts on her part supply no defect in the completeness of the husband's custody of the book, as shown by his placing it and keeping it in that room. His custody gains no support from any transaction between himself and wife touching the book, and, if any such transaction may be inferred from the testimony of the wife, it is incidental and collateral, and is wholly inconsequent. The widow testified that she rode to Kingston with her husband on the day of the deposit. That undoubtedly was a transaction between herself and husband, but it was testimony incidental to the material part of her testimony. If the material part of her testimony was competent, it would be carrying the exclusion of section 829 beyond reason

to condemn the material part because it was incidentally connected with testimony which was justly regarded as merely incidental and preliminary. Before the testimony of the widow of John O. Beaver was received, she executed and delivered to Charles C. Beaver an assignment of all her interest in the subject-matter of the action. She thereby ceased to be "a person interested in the event," and, as that was the only disqualification under which she rested, its removal made her competent. This practice is open to abuse, but as it is authorized by authority we must recognize it. *In re Wilson's Will*, 103 N. Y. 374, 8 N. E. Rep. 731; *Loder* v. *Whelpley*, 111 N. Y. 239, 18 N. E. Rep. 874. It disposes of the objection to the testimony of Alice J. Beaver. The judgment should be affirmed, with costs.